IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ASHLEY NICOLE MILLER,

        Plaintiff,

v.                                                 Case No. 14-4010-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff supplemental security income. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than

a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U .S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is

on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his previous work. The claimant is determined not to be disabled unless he shows he cannot perform his previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson*, 992 F.2d at 1120; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II. Procedural History

Plaintiff, born in 1988, alleged disability beginning in March of 2008 due to a number of mental and physical impairments. After a hearing at which Plaintiff testified, the ALJ found her not disabled. Plaintiff raises two challenges to that finding.

### A. Step Three

Plaintiff first contends the ALJ erred at step three in finding Plaintiff did not meet Listing 12.04, Affective Disorders.

At step two, the ALJ found Plaintiff has severe impairments of borderline intellectual functioning, depression, and substance abuse in early remission. But at step three, the ALJ determined that Plaintiff's these mental impairments did not meet or equal the severity of an affective disorder at § 12.04 of the Listed Impairments. In particular, the ALJ found that Plaintiff had not proven that she met the requirements of subsections B and C of § 12.04.

As relevant here, under subsection B the ALJ was required to determine whether Plaintiff's disorder resulted in at least two of the following:

> 1. Marked restriction of activities of daily living [ (ADLs) ]; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace …

Specifically, the ALJ found:

> In activities of daily living, the claimant has mild restriction. The claimant is able to perform all self-care activities independently. (Exhibit 8E/7). She reported being able to perform most ordinary household tasks without problem, such as making her bed, doing laundry, and cleaning the dishes. (Exhibit 8E/8). Through her testimony, the claimant acknowledged that she is able to prepare meals and regularly cares for her dog.
>
> In social functioning, the claimant has moderate difficulties. The claimant alleges having difficulties getting along with others at times. However, throughout the majority of the relevant period being

4

> evaluated, the claimant has lived in a home with three friends. She is able to use the bus for transportation independently, and is able to grocery shop in public without problem. When she was briefly doing drugs, the claimant testified that she did them with "friends" from the bus station or streets, which further supports that the claimant has no more than moderate limitations in this area.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Based on the combination of the claimant's cognitive and psychological impairments, it is reasonable to assume that the claimant has moderate difficulties in this area. However, the claimant reported having daily hobbies that include watching television, listening to music, drawing, writing, and playing video games. (Exhibit 8E/10). All of these activities require a significant amount of concentration, persistence, and pace, which indicates that the claimant has no more than moderate limitations in this area.

Tr. 16-17. Plaintiff does not challenge the accuracy of the stated facts relating to her activities of daily activities, her social functioning, or her daily hobbies, but challenges the ALJ's conclusions based on those facts.

The ALJ further found that the "paragraph C" criteria of 12.04 were not satisfied, stating:

> Claimant's conditions would not cause her to decompensate if just a minimal increase in her mental demands or a changes in her environment were presented. … [T]he claimant does not have repeated episodes of decompensation of extended duration. There is no evidence of the claimant needing a highly supportive living arrangement in order to function well. The claimant has demonstrated the ability to function independently, regardless of if she was in her own home or elsewhere.

Tr. 17.

Plaintiff contends that "[t]he record of her activities as a whole suggest[s] that B.1, 2 and 3 are met." Dk. 10, p. 5. But Plaintiff provides no citation to any evidence of record in support of this assertion to show that

5

she has marked, instead of moderate or mild, limitations or difficulties in her ADLs, her social functioning, or her concentration, persistence, or pace.

In contrast, the record shows substantial evidence in support of the ALJ's findings. The ALJ stated that he gave significant weight to the opinion of the State agency psychological consultant, Dr. R.E. Schulman, PhD. Tr. 22. Dr. Schulman found in January of 2012 that Plaintiff had only mild restriction of her ADLs, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. Tr. 71. Specifically, regarding Plaintiff's sustained concentration and persistence limitations, Dr. Schulman opined that Plaintiff was "not significantly limited" in her ability to carry out very short and simple instructions, was "moderately limited" in her ability to carry out detailed instructions, was "moderately limited" in her ability to maintain attention and concentration for extended periods, and was "not significantly limited" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 73-74. Regarding Plaintiff's social limitations, Dr. Schulman found her "moderately limited" in her ability to interact appropriately with the general public, but "not significantly limited" in her ability to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or to maintain socially appropriate

6

behavior and to adhere to basic standards of neatness and cleanliness. Tr. 74.

The ALJ also gave significant weight to the opinions of Stanley I. Mintz, Ph.D., a consultative psychologist who evaluated Plaintiff on January 25, 2011, "because he thoroughly examined the claimant and had access to the results of standardized testing at the time he formulated his opinion that job placement was appropriate for the claimant," and because his opinion on that issue was consistent with his examination findings and with the evidence of the record as a whole. Exhibit 5F. Tr. 22. Dr. Mintz found that Plaintiff functioned in the borderline intellectual range. He opined that Plaintiff's test results and interview impressions suggested a "bipolar disorder without psychotic features and a cannabis abuse disorder," and that Plaintiff did "not appear to be depressed, anxious, phobic or obsessive-compulsive." Tr. 381-82. He added that Plaintiff has had "difficulty with schooling and was in Special Education. She appears motivated to improve her condition." *Id*. He recommended mental health treatment, cannabis abuse outpatient rehabilitation and relapse prevention treatment, and job placement. *Id*.

Plaintiff does not show any treating or examining physician or psychologist's opinion that she is disabled. *See Bridgeford v. Chater*, 922 F.Supp. 449, 459 (D. Kan. 1995) (finding it significant that none of claimant's physicians opined he was disabled).

7

The ALJ further found that during the relevant time period, Plaintiff had received only conservative mental health treatment, had failed to show up at some scheduled appointments, and had failed to comply at times with her prescribed treatment regimen. Tr. 19-22. Those findings are supported by the record. *See e.g.*, Tr. 307, 318, 399, 402-405, 435. The record additionally shows that her psychological symptoms were largely well-controlled by medication. Tr. 396, 404-05, 438, 458.

The Court finds substantial evidence in support of the ALJ's paragraph B findings for Listing 12.04. The Court finds it unnecessary to review the ALJ's paragraph C findings for Listing 12.04, the only Listing argued by the Plaintiff in this appeal.

**RFC**

Plaintiff next contends that the ALJ's RFC findings are contradicted by Plaintiff's "undeniable psychological disorder," her low IQ score of 73, her GAF score of 49 or 50, and the weight of findings by Valeo professionals who treated Plaintiff over a period of four or more years. Dk. 10 p. 6.

The ALJ found that the claimant has the following RFC:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: is limited to the performance of simple, routine, and repetitive tasks, involving only simple work-related decisions, with few, if any, workplace changes; is limited to occasional interaction with the general public; and is limited to jobs where all instructions are provided either verbally or by demonstration.

Tr. 18.

Regarding GAF scores, the ALJ found:

> ... although she was consistently assessed a GAF score of 50 during her first few months of psychiatric treatment from late 2008 into the first half of 2009, it does not appear that her assessed GAF scores were ever adjusted during this initial treatment period, despite the claimant's significant documented symptomatic improvements. Nonetheless, from August 2009 through December 2010, the claimant's assessed GAF scores gradually increased from 55 to 60, which is indicative of only moderate psychological symptoms.

Tr. 19. He further found that Plaintiff was assessed a GAF score of 60 throughout 2011. But in October of 2012, the ALJ found that her GAF was "decreased to 49 ... , which is indicative of serious psychological symptoms." Tr. 21. But the ALJ found "nothing in the October 2012 treatment notes to justify the significantly lowered GAF score," and Plaintiff suggests none.

The record shows that the GAF of 49 was made by "Marsha Bacote Alleyne, APRN." Tr. 460. She offered no explanation of how she calculated the score, how it impacted Plaintiff's functional abilities, or why she significantly lowered the GAF to 49 in October despite more favorable objective findings than those during Plaintiff's prior visit in August of 2012, when she assessed Plaintiff's GAF as 60. *Compare* Tr. 454-56 (August 2012 assessment of 60, finding Plaintiff's mood to be "depressed" and her sleep "poor") to Tr. 457-460 (October 2012 assessment of 49, finding Plaintiff's mood to be "euthymic" (not depressed), her sleep "fair," and all other objective findings identical to those she made in August 2012). The ALJ thus reasonably found that nothing in the October 2012 treatment notes justified the significantly lower GAF score.

Further, the GAF is a subjective determination of 'the clinician's judgment of the individual's overall level of functioning.' American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000). "By itself, a GAF score "is not essential to the RFC's accuracy." (Citation omitted.)." *Atkinson v. Astrue,* 389 Fed.Appx. 804, 808, 2010 WL 2977593, 3 (10th Cir. 2010). While a GAF score of 41-50 can indicate serious functional impairments in social, occupational or educational settings, *Langley v. Barnhart,* 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004), Plaintiff cites nothing in the record indicating that the Plaintiff's score of 49 in 2012 or 50 in 2008 undermines the ALJ's RFC determination or otherwise indicates an impairment that would seriously interfere with Plaintiff's ability to work.

Plaintiff generally contends that the ALJ should have given more weight to Valeo records reflecting four years of treatment, than to the opinion of an agency psychologist who saw claimant only once in 2011. But Plaintiff does not develop this argument except in the context of the GAF scores addressed above.

Plaintiff also asserts that the ALJ misconstrued Plaintiff's testimony and school records in finding that Plaintiff has "at least a high school education," and that her latest report card showed her passing all her classes. Tr. 23. But Plaintiff concedes that she testified that she is a high school graduate, and the record confirms the statement about her report card. *See* Tr. 266.

10

Plaintiff also alleges that the ALJ overlooked comments by teachers that Plaintiff was "functioning in the mentally retarded range," Tr. 272, and that Plaintiff "may require a guardian" upon graduation. But those comments are from Plaintiff's IEP in October of her first semester of her sophomore year in high school, Tr. 277, a date prior to the alleged onset of her disability, so they carry no weight regarding Plaintiff's ability to work after graduation – the issue facing the ALJ. And no one suggests that Plaintiff required a guardian after she graduated from high school. Instead, the record shows that Plaintiff admitted having no problems caring for her personal needs, Tr. 224, or completing various household chores, Tr. 225, or caring for her dog, Tr. 39. She was able to live with friends, to take the bus or ride a bicycle to get to her appointments, to do odd jobs, Tr. 411, to shop in public, and to work full-time babysitting her two-year-old nephew, Tr. 399. And she continued to actively seek employment after her alleged disability onset date, Tr. 404.

Having examined the specific claims of error, the Court finds sufficient evidence that a reasonable mind might accept to support the conclusion of non-disability. The standard of review "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

11

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 25th day of March, 2015, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge